Carla Gowen McClurg, OSB #165144
Trial Attorney
U.S. Department of Justice
Office of the United States Trustee
620 SW Main Street, Room 213
Portland, OR 97205
Tel: (503) 326-7659
Email: carla.mcclurg@usdoj.gov

Attorney for Gail Brehm Geiger, Acting United States Trustee for Region 18

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Turning Leaf Homes IV, LLC,<br><br>Debtor. | Case No. 17-30353-tmb11<br><br>**UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7** |

The Acting United States Trustee for Region 18, Gail Brehm Geiger (the "UST"), by and through Trial Attorney Carla Gowen McClurg, hereby moves the Court for an order dismissing this case, or, in the alternative, converting this case to one under chapter 7. Cause for dismissal or conversion exists because the manager of the debtor, Tracey Baron ("Baron"), caused an unauthorized and undisclosed post-petition transfer of the debtor's funds to another of his entities (apparently to repay undisclosed loans), failed to deposit income into the debtor's bank account, used cash collateral without court authorization substantially harmful to a creditor, filed misleading monthly operating reports, and is engaged in gross mismanagement of the debtor.

**Page 1 -** UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7

Case 17-30353-tmb11    Doc 87    Filed 08/25/17

## A. Factual Background

Baron is the manager of and holds direct and indirect ownership interests in a number of business entities generally involved in the purchase of various types of residential real estate interests in the greater Portland Metropolitan Area subject to lenders' encumbrances. Baron's total inventory of properties consisted of approximately 80 as of August 2016. The residential properties were held in the names of various entities, including RenX Group, LLC ("RenX"); Turning Leaf Homes, LLC ("Turning Leaf"); and Turning Leaf Homes III, LLC.

### 1. Crimson Investment Group, LLC's Bankruptcy Case

In June 2016, after efforts on three residential properties to negotiate with lenders proved unsuccessful, deeds were signed transferring interests in three properties from RenX and Turning Leaf to Crimson Investment Group, LLC ("Crimson") – an entity managed and controlled by Baron. Turning Leaf holds 100 percent of the equity in Crimson; Baron and his wife, Michelle Baron ("Michelle"), each own 50 percent of the equity in Turning Leaf.

Crimson filed a voluntary chapter 11 petition on July 14, 2016, Case No. 16-32747-tmb11 (the "Crimson Case"). Baron was designated as the person required to perform the duties of Crimson as debtor-in-possession pursuant to an order entered on July 14, 2016.

Baron testified under oath at the meeting of creditors in the Crimson Case on August 16, 2016 (the "Crimson Meeting")[1] that he read and understood the United States Trustee's Operating Guidelines (the "Operating Guidelines").[2] Baron also testified that he is the principal of Turning Leaf Management, Inc. ("Turning Leaf Management"). Articles of incorporation for Turning Leaf Management were filed with the Oregon Secretary of State on May 17, 2016. In addition, Baron testified that he and his wife each own 50-percent interests in Turning Leaf

---

1 A true and correct copy of Crimson Meeting excerpts is attached hereto as "Exhibit 1."
2 A true and correct copy of the Operating Guidelines is attached hereto as "Exhibit 2."

**Page 2 - UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7**

Management. According to Baron's testimony, Turning Leaf Management was formed to manage all of the properties owned by Baron-affiliated entities.

During the Crimson Meeting, Baron testified that rents for the Crimson properties would be deposited into Crimson's debtor-in-possession account. Baron also testified that Turning Leaf Management would have no involvement in managing the Crimson properties unless Turning Leaf Management and Crimson entered into an agreement.

### 2. Turning Leaf Homes IV, LLC's Bankruptcy Case

Articles of organization were filed with the Oregon Secretary of State for Turning Leaf Homes IV, LLC ("Turning Leaf IV") on February 22, 2016. Baron controls Turning Leaf IV as its sole member and manager.

On February 3, 2017, Baron signed a counter check drawn on an account held in the name of Turning Leaf Management in the amount of $5,000, which was deposited into Turning Leaf IV's bank account number ending 9458 on February 3, 2017.

On February 6, 2017, deeds were signed to convey interests in five residential properties and redemption rights in four properties to Turning Leaf IV (the "Turning Leaf IV Properties and Rights"). That same day, Turning Leaf IV filed a voluntary chapter 11 bankruptcy petition (the "Turning Leaf IV Case"). On February 7, 2017, the Court entered an order designating Baron as the person to fulfill the duties of the debtor-in-possession for Turning Leaf IV.

On February 15, 2017, Baron attended an initial debtor interview at the UST's Portland office, where the UST discussed with Baron Turning Leaf IV's responsibilities as a debtor-in-possession . On February, 20, 2017, Turning Leaf IV filed its Schedules and Statement of Financial Affairs (the "Schedules and SOFA"), which Baron signed under penalty of perjury.

Page 3 - UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7

Case 17-30353-tmb11    Doc 87    Filed 08/25/17

Turning Leaf IV's Schedule G discloses four properties with lease agreements: 17538 Kimmel Ct., Beaverton, OR leased for $2,200 per month; 7582 N. Burlington Ave. #7-5, Portland, OR leased for $1,500 per month; 9995 SW Denney Road, Portland, OR (the "Denney Road Property") leased for $1,000 per month; and 4644 Melody Lane, Roseburg, OR leased for $1,250 per month.

Turning Leaf IV's Schedule E/F does not list any insiders as creditors other than Baron's parents. Neither Baron nor any of his affiliated entities are listed as creditors of Turning Leaf IV on Schedule E/F.

On February 22, 2017, a debtor-in-possession account number ending 0160 was opened for Turning Leaf IV. The opening deposit was $464 transferred from Turning Leaf IV account number ending 9458. On February 28, 2017, one deposit of $4,400 was credited to Turning Leaf IV account number ending 9458. The source of the $4,400 deposit is unclear.[3]

On March 7, 2017, Baron testified under oath at the meeting of creditors (the "Turning Leaf IV Meeting") that: (1) Baron received and read the Operating Guidelines and did not have any questions;[4] (2) Turning Leaf IV paid $26,000 in consideration for the Turning Leaf IV Properties and Rights; (3) all of Turning Leaf IV's income "goes into the . . . DIP account directly from the . . . tenant. And we don't touch it. It just stays there"; (4) Turning Leaf Management did not have a role with Turning Leaf IV, that "everything is separate" as between his various entities, and that "accounting's all done and you cannot commingle. It doesn't go back and forth"; (5) Baron had signed up a new tenant for the property located at 16530 NE

---

3 The UST has requested that Turning Leaf IV provide an explanation and documentation regarding the source of the $4,400. The UST has not received an explanation or documents as of the date of this motion.
4 A true and correct copy of Turning Leaf IV Meeting excerpts is attached hereto as "Exhibit 3."

**Page 4 - UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7**

Hillsboro Highway, Newberg, OR (the "Newberg Property") for a monthly rent of $2,200; and (6) Turning Leaf IV had monthly income of $8,150.

During the Turning Leaf IV Meeting, the attorney for Turning Leaf IV explained that the Denney Road Property was subject to an assignment of rents provision and that Turning Leaf IV would segregate and account for the rents. In the Debtor Statement in Advance of Case Status Conference filed on February 28, 2017, ECF No. 26, Turning Leaf IV advised that it would not use the rents from the Denny Road Property without requesting authorization to use cash collateral from the Court.

On July 6, 2017, the UST requested that Turning Leaf IV provide various documents and information, including documentation of the purchase of the Turning Leaf IV Properties and Rights by Turning Leaf IV.

Documents produced to the UST by Turning Leaf IV showed that on February 7, 2017, Baron signed a counter check drawn on a Turning Leaf Management account in the amount of $22,000, which was deposited into Turning Leaf IV's account number ending 9458 on February 7, 2017. Baron then signed a counter check drawn on the Turning Leaf IV account number ending 9458 in the amount of $26,000 with the notation "transfer" on February 7, 2017. The $26,000 was deposited into Turning Leaf Management's bank account on February 7, 2017. Baron did not seek Court approval before transferring $26,000 to Turning Leaf Management on February 7, 2017.

Turning Leaf IV did not disclose any transfers outside the ordinary course of business on the February 2017 monthly operating report filed on March 21, 2017 (the "February MOR"). Baron signed the February MOR under penalty of perjury. The post-petition transfer was not recorded or disclosed on the February MOR. In fact, no transactions outside the ordinary course

Page 5 - UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7

Case 17-30353-tmb11    Doc 87    Filed 08/25/17

of business, including financial transactions with insiders, were disclosed on the February MOR.

The monthly operating report for March 2017, filed on April 21, 2017 (the "March MOR"), listed for the first time notes payable of $25,500 on form UST-12 (Comparative Balance Sheet); however no loan proceeds were recorded as cash received on form UST-13 (Comparative Cash Flow Statement). The March MOR also listed for the first time real property assets of $24,500. The $24,500 appears to relate to Turning Leaf IV's purported purchase of the Turning Leaf IV Properties and Rights. No transactions outside the ordinary course of business, including financial transactions with insiders, were disclosed on the March MOR.

It appears that the note payable of $25,500 listed on the March MOR results from the booking in March of the deposit of $5,000 on February 3, 2017 and $22,000 on February 7, 2017 as a $27,000 note payable or loan. The $25,500 note payable amount appears to result from crediting the $26,000 payment on February 7, 2017 against the $27,000 note payable balance (leaving a payable balance of $1,000) and recording the $24,500 characterized as real property purchases as a payable. It is not clear to whom the $25,500 payable is owed based on the March MOR or subsequent reports. According to Turning Leaf IV's records, it appears that at least part of a $5,000 pre-petition loan was repaid through the $26,000 payment in addition to a $22,000 post-petition loan.

On August 8, 2017, UST Bankruptcy Analyst and CPA, Tammy L. Combs ("Combs"), emailed counsel for Turning Leaf V and Turning Leaf IV and advised him of the discrepancies between the ending bank balances for June 2017 and the monthly operating reports. Combs asked counsel for Turning Leaf V and Turning Leaf IV to provide an explanation for the discrepancy and any documents that would explain the difference. Combs noted that, on the June 2017 monthly operating report, Turning Leaf IV reported cash of $28,419, but the bank

Page 6 - UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7

Case 17-30353-tmb11    Doc 87    Filed 08/25/17

statements only showed a cash balance of $14,619.40 – a difference of $13,799.60.

After several requests for a response, the UST had a conversation with the CPA for Turning Leaf IV and Turning Leaf V on August 22, 2017, who confirmed there were undeposited funds as shown on a supplemental financial statement provided for June 2017 ("June Supplemental Financial Statement"). The CPA advised that the undeposited funds had been returned to the estates as of mid-July 2017.[5]

On August 23, 2017, Turning Leaf IV filed its monthly operating report for July 2017 (the "July MOR").[6] The July MOR and supporting documents show that $13,800 was transferred from account number ending 5870 into Turning Leaf IV's account on July 20, 2017. The identity of the holder of account number ending 5870 and the location of the $13,800 are not clear. In fact, a review of the July MOR without the supporting bank and financial statements would not reveal that $13,800 consisted of previously "undeposited funds."

The historical cash balances on form UST-12 (Comparative Balance Sheet) attached to the July MOR reported cash balances that are much higher than the bank balances for the period of March 2017 through June 2017. *See* Exhibit 5. For example, the ending cash balance as of June 30, 2017 listed on form UST-12 is $28,419, even though the actual ending cash balance in the bank account was only $14,619.40. The Comparative Balance Sheet included with the July MOR was misleading by including incorrect historical cash balances and failing to account for the $13,800 in undeposited funds.

---

5 A true and correct copy of the June Supplemental Financial Statement, showing undeposited funds of $13,800 as of the end of June 2017, is attached hereto as "Exhibit 4." Attached hereto as "Exhibit 5" is a summary showing discrepancies between the bank balances and the cash balance reported on the monthly financial reports for March, April, May, and June 2017.
6 A true and correct copy of the July MOR, including financial statements and a bank statement provided to the UST, is attached hereto as "Exhibit 6."

**Page 7 - UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7**

The UST's analysis of the monthly operating reports and bank balances for Turning Leaf IV, for the period of February 2017 through June 2017, shows that the ending bank balance in April 2017 was only $810.59 compared with a cash balance reported on the monthly operating report of $14,611.00. *See* Exhibit 5. The financial statements provided to the UST with the monthly operating report for April 2017 for Turning Leaf IV reported net rental income of $7,856.00, but no deposits were made into the bank account.[7] It does not appear that Turning Leaf IV deposited rents or segregated the rent for the Denney Road Property for at least the month of April 2017.

### 3. Turning Leaf Homes V, LLC's Bankruptcy Case

Articles of Organization were filed with the Oregon Secretary of State for Turning Leaf Homes V, LLC ("Turning Leaf V") on May 17, 2017. Baron is the sole member and manager of Turning Leaf V.

On May 23, 2017, Turning Leaf V filed a voluntary chapter 11 bankruptcy petition, Case No. 17-31944-tmb11 (the "Turning Leaf V Case"). Baron was designated as the person to fulfill the duties of the debtor-in-possession in the Turning Leaf V Case pursuant to a court order entered on May 24, 2017.

In the Turning Leaf V Case, Baron was responsible for another unauthorized post-petition transfer.[8] On June 8, 2017, $15,000 was transferred from the Turning Leaf V pre-petition bank account into the Turning Leaf V debtor-in-possession bank account. The next day, on June 9, 2017, Baron signed a counter check for $12,000 drawn on Turning Leaf V's debtor-

---

7  A true and correct copy of Turning Leaf IV's April 2017 monthly operating report, with attachments submitted to the UST, is attached hereto as "Exhibit 7."
8  More details regarding the Turning Leaf V case are contained in the United States Trustee's Motion for an Order Dismissing Case, or, in the Alternative, Converting Case to Chapter 7 filed in the Turning Leaf IV Case on the same date as the date of this motion.

**Page 8 -  UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7**

Case 17-30353-tmb11    Doc 87    Filed 08/25/17

in-possession account, which was deposited into an account held by Turning Leaf Management. Turning Leaf V did not obtain Court authority to transfer the $12,000 to Turning Leaf Management. Baron also did not appropriately report the post-petition payment of $12,000 on the May/June 2017 monthly operating report for Turning Leaf V.

In addition to failing to disclose the post-petition transfer, the May/June monthly operating report did not match information disclosed in the associated bank statement. For example, Turning Leaf V's reported ending cash balance on May/June monthly operating report was not the same as the cash balance listed on the bank statement. Additionally, Turning Leaf V's May/June monthly operating report listed post-petition gross revenue of $6,783 and collections of $4,250, but according to the associated bank statement no deposits were made into bank accounts held by Turning Leaf V, other than the $15,000 capital contribution.

On August 7, 2017, counsel for the UST emailed counsel for Turning Leaf V requesting an accounting for the disposition of the $12,000 post-petition transfer, and inquiring as to Turning Leaf V's intention regarding that unauthorized transfer. Counsel for the debtor advised that he had asked that Turning Leaf Management return the $12,000 unless there was a valid reason for the transfer of the funds. To date, the UST has not received documentation confirming the return of the $12,000. The bank statement for Turning Leaf Management for June 2017 showed a negative balance as of June 30, 2017 of ($944.44).

### B. Legal Analysis

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 2100-1 of the United States District Court for the District of Oregon. This matter is a core proceeding as defined by 28 U.S.C. §§ 157(b)(2)(A) and (O). Pursuant to 11 U.S.C. § 307, the UST may raise, appear, and be heard on any issue in any case or proceeding

Page 9 - UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7

Case 17-30353-tmb11    Doc 87    Filed 08/25/17

under Title 11.

Section 1112(b) of the Bankruptcy Code provides that the court shall convert a chapter 11 case to one under chapter 7 or dismiss a chapter 11 case, whichever is in the best interest of creditors and the estate, if the movant establishes "cause." The Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA") expanded the definition of "cause" for relief under § 1112(b) and limited the court's discretion under section 1112(b) once the movant establishes cause. *See* 11 U.S.C. §§ 1112(b)(1), (b)(2). Prior to BAPCPA, section 1112(b) provided that a court "may" convert or dismiss a chapter 11 case for cause. *See In re Prods. Int'l Co.*, 395 B.R. 101, 108 (Bankr. D. Ariz. 2008).

The Bankruptcy Code provides 16 specific, but non-exclusive, examples of cause in section 1112(b)(4). 11 U.S.C. § 1112(b)(4); *see In re Consolidated Pioneer Mortg. Entities*, 248 B.R. 368 (9th Cir. BAP 2000) (the list in section 1112(b) is illustrative rather than exhaustive). The Court may also "consider other factors as they arise, and use its equitable powers to reach the appropriate result in individual cases." *Id.*; *In re Brown*, 951 F.2d 564, 571 (3d Cir. 1991) *citing* S. Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5903; H.R. Rep. No. 595, 95th Cong. 1st Sess. 406 (1977), reprinted in 1978 U.S.C.C.A

   1. **The Court should dismiss this case due to Turning Leaf IV's failure to file complete and accurate monthly financial reports.**

Section 1112(b)(4)(F) establishes that an "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter" constitutes cause for dismissal. The importance of timely and accurate reporting by a chapter 11 debtor-in-possession cannot be understated, as set forth in *In re Whettten*, 473 B.R. 380, 383-84 (Bankr. D. Colo. 2012):

Page 10 - UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7

Case 17-30353-tmb11    Doc 87    Filed 08/25/17

> Monthly reports and the financial disclosures contained within them "are the life-blood of the Chapter 11 process" and are more than "mere busy work." *Matter of Berryhill*, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991). Without these reports, the UST and creditors cannot determine when a debtor is incurring additional losses, is rendered administratively insolvent, or is transferring assets without authorization. The reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements and they serve as a litmus test for a debtor's ability to reorganize. Thus, non-compliance is not a "mere technicality."

"'Filing a piece of paper is meaningless if the content is inaccurate, misleading, or wrong, thus the content of these documents is always relevant.'" *In re Hoyle*, 2013 Bankr. LEXIS 420; 2013 WL 210254 at *35 (Bankr. D. Idaho 2013) (quoting *In re Tucker*, 411 B.R. 530, 532 (Bankr. S.D. Ga. 2009)). The filing of incomplete and inaccurate monthly financial reports therefore constitutes cause for dismissal or conversion. *Id.*

In this case, Turning Leaf IV has filed operating reports that are incomplete, inaccurate, misleading, and wrong. For example, the February MOR does not report the post-petition transfer of $26,000 to Turning Leaf Management. Instead, it withholds this transaction and does not disclose it. Similarly, the monthly operating reports Turning Leaf IV filed for March 2017 through June 2017 report cash balances that do not match associated bank balances. Turning Leaf IV was therefore recording the receipt of income in the amount of approximately $13,800 as a cash item that was, in fact, not deposited.

Additionally, the Comparative Balance Sheet included with Turning Leaf IV's July MOR is misleading because it includes historical cash figures that do not track with associated bank balances, and it fails to separately account for $13,800 in undeposited funds that were returned to the estate in July 2017.

Page 11 - UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7

Case 17-30353-tmb11    Doc 87    Filed 08/25/17

Turning Leaf IV's operating reports are thus substantively deficient, and it has failed to either amend its operating reports or explain the misleading and material discrepancies contained therein. The Court should therefore enter an order dismissing this case.

**2. The Court should dismiss this case due Turning Leaf IV's unauthorized use of cash collateral that is substantially harmful to one or more creditors.**

Section 1112(b)(4)(D) provides that the unauthorized use of cash collateral substantially harmful to one or more creditors constitutes cause for dismissal. *See In re Visicon S'holders Trust*, 478 B.R. 292, 314 (Bankr. S.D. Ohio 2012) ("'Substantial' is defined as 'considerable in importance, value, degree, amount, or extent,' . . . and the payment of expenses for which no explanation was given unequivocally rises to a level of being 'considerable in importance, value, degree, amount, or extent.'") (citation omitted). In this case, Turning Leaf IV has apparently used or disposed of the rent from the Denney Road Property without Court authorization. Turning Leaf IV reported receipt of rent from the Denney Road Property on at least the April 2017 MOR, but it did not deposit rent. Such "payment of expenses for which no explanation was given" is "substantial" in its harm to creditors and "substantial" in its disregard for the integrity of the bankruptcy process. *Visicon S'holders*, 478 B.R. at 314. *See also In re Fall*, 405 B.R. 863, 870 (Bankr. N.D. Ohio Jan. 8, 2009) (failure to account for use of cash collateral "not only . . . substantially harm[s] the Creditor, . . . who had no way of knowing the disposition of its assets, but [exhibits] utter disregard of the bankruptcy process . . . [and] the Bankruptcy Code's equitable nature.").

Turning Leaf IV's unauthorized use of cash collateral is substantially harmful to at least one creditor. Cause therefore exists to dismiss this case and the Court should enter an order dismissing it.

Page 12 - UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7

Case 17-30353-tmb11    Doc 87    Filed 08/25/17

### 3. The Court should dismiss this case because of Baron's gross mismanagement.

Debtors are debtors-in-possession of their chapter 11 estate. As such, they owe fiduciary duties to their creditors and are obligated to follow the Bankruptcy Code and Rules. *See, e.g.* §§ 1106, 1107 and Fed. R. Bankr. P. 2015 (delineating the duties of chapter 11 debtors-in-possession, including filing periodic reports of business operations); *In re Sal Caruso Cheese, Inc.*, 107 B.R. 808, 817 (Bankr. N.D.N.Y. 1989) ("As a fiduciary, the debtor is obligated to protect and conserve property in its possession, as well as to provide voluntary and honest disclosure of financial information—a reasonable *'quid pro quo'* for its temporary relief from substantial financial obligations.") (citations omitted).

Section 1112(b)(4)(B) provides that gross mismanagement of the estate constitutes cause for dismissal, conversion, or other action by the court. *In re Prods. Int'l Co.*, 395 B.R. 101, 110-111 (Bankr. D. Ariz. 2008). Bankruptcy courts have found that a wide variety of conduct can establish gross mismanagement, including: the failure to attempt to recover property arguably belonging to the estate; failure to justify expenses, comply with financial reporting requirements, and keep accurate accounting records leading to a lack of control over estate cash; and failure to follow the Bankruptcy Code and obtain the Court's approval for post-petition borrowing, paying pre-petition debts, and paying professionals. *In re Lodge at Big Sky, LLC*, 2011 Bankr. LEXIS 2296, 2011 WL 2358146 (Bankr. D. Mont. 2011); *Visicon S'holders*, 478 B.R. at 309; *In re Wallace*, 2010 Bankr. LEXIS 261, *15-*19 (Bankr. D. Idaho Jan. 26, 2010).

Baron has grossly mismanaged the Turning Leaf IV estate. During Turning Leaf IV's time as a debtor-in-possession, rents have not been deposited into Turning Leaf IV's account and Turning Leaf IV transferred $26,000 to Turning Leaf Management without Court authorization. Baron thereafter filed monthly operating reports that did not clearly disclose the unauthorized

Page 13 - UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7

Case 17-30353-tmb11    Doc 87    Filed 08/25/17

post-petition transfer and that reported cash balances that did not match related bank statements. Baron also appears to have repaid unauthorized insider loans without Court authorization.

Baron's gross mismanagement of Turning Leaf IV is not a product of his failure to understand bankruptcy requirements. Baron has substantial bankruptcy experience in other bankruptcy cases.

Baron testified that he received the Operating Guidelines on more than one occasion. The Operating Guidelines clearly explain the debtor-in-possession's obligations to file complete and accurate monthly financial reports; maintain adequate insurance coverage for estate property; keep complete and accurate books and records; and obtain court approval before engaging in certain transactions, such as making a payment on pre-petition debt or selling an asset outside the ordinary course of the debtor's business. A number of the Operating Guidelines echo Bankruptcy Code and Rule provisions. *See e.g.*, 11 U.S.C. §§ 363, 364, 1106, 1107; Fed. R. Bankr. P. 2015, 4001, 6004.

Baron demonstrated his knowledge of the duties of a debtor-in-possession to account for estate monies and to employ professionals when he testified during the Crimson Meeting that all rents received in the Crimson Case would be deposited into Crimson's debtor-in-possession bank account and that Turning Leaf Management would have no involvement in managing Crimson's properties unless Turning Leaf Management and Crimson entered into an agreement.

Baron further demonstrated this knowledge in the Turning Leaf IV Case when he testified that all of Turning Leaf IV's income "goes into the . . . DIP account directly from the . . . tenant. And we don't touch it. It just stays there." Baron further testified that Turning Leaf Management did not have a role with Turning Leaf IV at the time of the meeting. Baron also testified that "everything is separate" as between his various entities and that "accounting's

Page 14 - UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7

Case 17-30353-tmb11    Doc 87    Filed 08/25/17

all done and you cannot commingle. It doesn't go back and forth."

Baron has intentionally and knowingly disregarded his obligation as the manager of Turning Leaf IV to deposit rents, to account for the disposition of all estate funds, to file complete and accurate monthly financial reports, and to obtain Court approval before transferring estate funds outside the ordinary course of business. The Court should therefore dismiss or convert this case due to Baron's gross mismanagement of the estate.

**4. Dismissal is in the best interests of creditors and the estate.**

Pursuant to section 1112(b)(1), once cause has been established, the court must determine whether conversion to chapter 7 or dismissal is "in the best interests of creditors and the estate . . . unless the court determines that the appointment under section 1104(a) of a trustee or examiner is in the best interests of creditors or the estate." In this case, dismissal is in the best interests of creditors and the estate.

Conversion to chapter 7 would not be beneficial to the estate or to creditors. The Turning Leaf IV Properties are all over-encumbered. There does not appear to be any value for a chapter 7 trustee to realize in administering the case. *See Rand v. Porsche Fin. Servs.* (*In re Rand*), 2010 Bankr. LEXIS 5076, 2010 WL 6259960, *10 n.14 (B.A.P. 9th Cir. Dec. 7, 2010) (citing 7 Collier on Bankruptcy ¶ 1112.04[7] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed., 2010)) (noting that one factor weighing in favor of dismissal, as opposed to conversion, is the inability "of the trustee in a chapter 7 case to reach assets for the benefit of creditors.").

Additionally, appointment of a chapter 11 trustee would not benefit the estate or creditors. There does not appear to be sufficient funds in the estate to pay chapter 11 administrative expenses in addition to operating expenses.

Page 15 - UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7

Case 17-30353-tmb11    Doc 87    Filed 08/25/17

Dismissal of this case would allow creditors to pursue their remedies to foreclose or seek other remedies. The Court should therefore dismiss this case because dismissal would be in the best interests of creditors and the estate.

### C. Conclusion

Turning Leaf IV has failed to satisfy its fiduciary obligations as a debtor-in-possession even though its manager, Baron, has substantial bankruptcy experience. Cause therefore exists to dismiss or convert this case, and dismissal is in the best interests of creditors and the estate. Accordingly, the Court should enter an order dismissing this case.

DATED this 25th day of August, 2017.

          Respectfully submitted,
          GAIL BREHM GEIGER
          Acting United States Trustee for Region 18

          /s/ Carla Gowen McClurg
          CARLA GOWEN McCLURG, OSB #165144
          Trial Attorney

Page 16 - UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7

Case 17-30353-tmb11    Doc 87    Filed 08/25/17

# CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2017 I served a copy of the foregoing **UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING CASE, OR, IN THE ALTERNATIVE, CONVERTING CASE TO CHAPTER 7** by mailing a copy of this document, by United States first class mail, postage prepaid, addressed to the following:

Turning Leaf Homes IV, LLC
1701 SE OAK SHORE LN
Portland, OR 97267

                                        GAIL BREHM GEIGER
                                        Acting United States Trustee for Region 18

                                        /s/ Carla Gowen McClurg
                                        CARLA GOWEN McCLURG, OSB #165144
                                        Trial Attorney