Michael D. O'Brien, OSB 95105
Theodore J. Piteo, OSB 090311
Michael D. O'Brien & Associates, P.C.
12909 SW 68th Pkwy, Suite 160
Portland, OR 97223
(503) 786-3800

Turning Leaf Homes IV, LLC, Debtor-in-possession.

IN THE BANKRUPTCY COURT OF THE UNITED STATES

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In re: | ) | Case No. 17−30353−tmb11 |
| | ) | |
| Turning Leaf Homes IV, LLC | ) | DEBTOR RESPONSE TO |
| | ) | MOTION TO DISMISS |
| | ) | FILED BY THE UNITED STATES |
| Debtor-in-possession. | ) | TRUSTEE AND REQ HEARING |

     Now comes Debtor, Turning Leaf Homes IV, LLC, by and through its counsel, Theodore J Piteo, and in conjunction with the concurrently filed Declaration of Debtor's Manager, says the following in response to the Trustee's Motion to Dismiss.

### I.    Introduction

     This Debtor, along with the Debtor Turning Leaf Homes V, were formed by Tracey Baron immediately before filing for bankruptcy so that they could be used as vehicles to finally liquidate and establish valuation on certain properties that had been in foreclosure for many years. Mr. Baron tried to settle and negotiate this properties outside of a bankruptcy setting to no avail. As a solution, Mr. Baron capitalized these Debtors and transferred properties from his

other entities to these Debtors to utilize the bankruptcy system. All of the money placed into these Debtors at the outset were funds contributed from Mr. Baron. Mr. Baron continues to contribute funds and income producing properties to the Debtors in an effort to fund the cases and to provide for a payout to the unsecured creditors that is larger than they stand to gain in a dismissal.

Difficulties with the Debtor's ACH for rent payments occurred on two separate occasions. First, the ACH was slow to transfer the rents into the DIP account after filing. Then the ACH had a security lock down which prohibited transfer of funds from the ACH to the DIP account for a few weeks in June. Debtor's monthly reporting showed the funds being earned but the bank statements didn't match as a result of the lockdown. Debtor believes all the rent funds have now been fully deposited.

## II. Facts

### A. Turning Leaf Homes IV

On February 6, 2017, TLH IV, Debtor, acquired 9 properties, 5 were post-sale redemption rights properties, from various affiliated entities holding those property rights. Debtor's manager completed the transactions on that day and journaled the funds over between these entities and the Debtor prior to that point. (Dec of Baron para. 2). In TLH IV, the Estate had $5,000 in its bank account on the day of filing, February 6, 2017. (Dec of Baron para. 3). On February 7, 2017, Debtor's manager believed he needed to show the funds going through the Debtor account for the purchases of real property that were completed the prior day to fulfill the contractual obligation to prevent any putative issues with an incomplete sale. (Dec of Baron para. 4) Debtor's manager directed Turning Leaf Management, Inc. (TLM) to place $22,000 into the Debtor's Bank account and immediately record $26,000 going out to Turning Leaf Management,

Inc. to show the transfers. (Dec of Baron para. 4) He did this solely to record the journaled transactions and recognizes it was a mistake. (Dec of Baron para. 4). TLM never had the intent to contribute the $22,000 to the Estate. (Dec of Baron para. 5). Debtor's manager recognizes that that when he transferred out more than the $22,000, those were funds of the Estate. (Dec of Baron para. 6). Debtor's manager consented to return the $4,000 to the Estate and instructed TLM, Inc. to return those funds immediately and believes that was completed today. (Dec of Baron para. 6).

The monthly operating reports filed during this time inadvertently reflected a "note payable" between the Debtor and Debtor's manager's entities for the contribution and he didn't realize that was what that entry meant. (Dec of Baron para. 7). Now that Debtor's manager is aware of that, he instructed the Debtor's CPA to amend those monthly reports to provide that there was not a note payable and they are in process now. (Dec of Baron para. 7).

The DIP account was officially opened on February 22, 2017. (Dec of Baron para. 8). The Debtor received a hand deposited check of $4,400 in February from a new post-petition tenant. (Dec of Baron para. 8). That tenant hand delivered the checks to the TLH IV DIP account directly at the branch. (Dec of Baron para. 8). All other rent payments went through the software rental collection program Propertyware. (Dec of Baron para. 8). Unfortunately, for the remainder of February, March, and April, the rents were deposited into the main Propertyware account instead of the Debtor's DIP account. (Dec of Baron para. 8). Consultants who were initially helping Debtor's manager make the transition and get everything up and running were let go and new consultants were hired and there were transitional issues. These issues resulted in more time than normal between the change-over of accounts. (Dec of Baron para. 9).

Propertyware began properly depositing the funds into the TLH IV DIP account in May and June. (Dec of Baron para. 10). In late June, checks were forged as a result of theft from a vendor and the corresponding security breach caused a lock down on the Propertyware accounts and bank accounts. (Dec of Baron para. 10). This lockdown prevented immediate reconciliation of the rents that were incorrectly deposited earlier in the case. (Dec of Baron para. 10).

To clear the Propertyware issues took a few weeks, until approximately July 14, 2017. (Dec of Baron para. 11). Once that issue was resolved and all service was restored, all the rent funds from February, March, and April for TLH IV were reconciled and deposited into the TLH IV Bank account. (Dec of Baron para. 11). Since the completion of the change over all rents have gone directly into the DIP account and the bank statements now match the accrual accounting records. (Dec of Baron para. 11).

### B. Turning Leaf Homes V, LLC

In TLH V, the Debtor purchased thirteen properties. (Dec of Baron para. 12). Debtor's manager did the exact same thing as in TLH IV, running $12,000 through the account on June 9, 2017 to record the purchase of the TLH V properties having journaled the funds previously and recognizes that it was a mistake. (Dec of Baron para. 13). Those funds were subsequently returned to the Estate as of August 23, 2017. (Dec of Baron para. 13).

Propertyware was again slow in transferring rents over directly into the TLH V DIP account for June (officials at Propertyware took extra time to review the new account request because of the amount of ongoing accounts through their software). (Dec of Baron para. 14). Then before the transfer was completed, Propertyware had the security issue which prevented reconciliation of all the June rent funds that did not go into the DIP account. (Dec of Baron para. 14). Those

Page **4** of **11**       **DEBTOR RESPONSE TO MOTION TO DISMISS**

Case 17-30353-tmb11    Doc 91    Filed 09/08/17

funds have since been reconciled and the bank statement should match with the accrual accounting records. (Dec of Baron para. 14).

On the 107th Ave Property, Debtor's manager told the tenant not to pay, but apparently she paid anyway. (Dec of Baron para. 15). Debtor's manager was not aware of this until he fully reviewed the reconciled records. (Dec of Baron para. 15). The $1,500 is still in the bank account and Debtor will not use it due to cash collateral restrictions and will segregated the funds in separate account, if requested. (Dec of Baron para. 15). Debtor's manager has retained counsel to help him perform his fiduciary functions in the future in addition to the Debtor's counsel. (Dec of Baron para. 16).

### III.     Legal

A court shall convert or dismiss a case after notice and a hearing for cause unless, converting or dismissing the case is not in the best interests of the creditors or the estate and debtor can establish that there is i) a reasonable likelihood that a Plan will be confirmed within a reasonable time, ii) that there is a reasonable justification for the act or omission giving rise to the motion and iii) that it is cured within a reasonable period of time fixed by the court. 11 U.S.C. § 1112(a)-(b). The only item a court cannot excuse pursuant to 1112(b) is a "Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." *Id*. The Debtor bears the burden of proving unusual circumstances in a case only after cause is established for dismissal or conversion. Sanders v. United States Tr. (In re Sanders), No. CC-12-1398, 2013 WL 1490971, at *7 (9th Cir. BAP Apr. 11, 2013) (citing In re Orbit Petroleum, Inc., 395 B.R. 145, 148 (Bankr. D.N.M 2008)). Unusual circumstances is not defined in the Bankruptcy Code, "but the phrase contemplates conditions that are not common in chapter 11

cases." In re Pittsfield Weaving Co., 393 B.R. 271, 274 (Bankr. D.N.H. 2008), citing In re Fisher, 2008 WL 1775123 at *5 (Bankr. D. Mont. Apr.15, 2008). In deciding 1112(b) motions, "[c]ourts have much discretion in determining whether there are unusual circumstances that weigh against conversion or dismissal." Id. at 274-5, citing In re The 1031 Tax Group, LLC, 374 B.R. 78, 93 (Bankr.S.D.N.Y.2007) (section 1112(b) "explicitly provides for this discretion where a court is able to identify 'unusual circumstances ... that establish that the requested conversion is not or dismissal is not in the best interests of creditors and the estate' ").

### IV. Analysis

#### A. These cases are unusual in the chapter 11 world

The Debtor must show that the circumstances of its chapter 11 differs from the standard chapter 11 filing. The Debtor's manager in this case contributed all the funds into the Debtor immediately prior to filing for relief under Chapter 11 of the Bankruptcy Code. The Debtor's manager also transferred all the properties *into* the Debtor from his other entities immediately before bankruptcy. This is different from a normal case where the Debtor is actively transferring property *out* and running a foal of preferential transfer and Unlawful Fraudulent Transfer Act claims. The Debtor's manager also continues to provide support to the Debtor in managing the properties, attending to tenant complaints, and helping prepare for confirmation. Debtor's manager has not charged a fee for these items. Debtor and the unsecured creditors have benefited as a result. As of August 30, 2017, Debtor has over $30,000 in the DIP account for the performance of a Plan of Reorganization. See Attached Exhibit A. Debtor's manager's actions have been targeted toward creating more equity for the unsecured creditors in his cases and he continues to do that. Debtor has also filed its Plan and Disclosure Statement with the Court and expects those to be confirmed in short order.

### B. The transfer of funds early in the case was a mistake

The Debtor's manager in this case believed, mistakenly, that he needed to take additional steps to record the Debtor's payments to its affiliates for the properties through the DIP account. The United States Trustee has highlighted those transactions as occurring on Feb 7, 2017. In those transactions, the Debtor's manager contributed $22,000 into the pre-DIP Bank of the West account (X9485) which held a balance of $5,000 as of the day of filing. He then immediately paid out $26,000 to "record" the transactions. The Debtor should never have received the $22,000 to begin with because the transaction was unnecessary and the Debtor's manager never had the intent to give the estate $22,000, he merely wanted his transactions to be reflected. The Debtor has received the $4,000 back from the day of filing funds and those amounts will be reflected in the next monthly bank statement. A similar action happened in Turning Leaf Homes V, LLC. Debtor's manager has indicated that it will not take those steps again. Debtor's manager has indicated that he treated these contributions as equity contributions and did not seek reimbursement from the Debtor despite the monthly operating reports labeling and is working to amend those reports now.

### C. The property rent funds were delayed by a third party software provider

The United State Trustee points to a disconnect between rents deposited in the DIP account and those reflected on the Bank Statements as received; these discrepancies result from accrual accounting and a large ACH provider with plenty of bureaucracy. In this case the UST points to two periods were the Debtor's bank statements failed to keep up with the accrual accounting: after filing and mid-June. First, in the initial handoff starting in February, there were problems with the funds going into the proper bank account. The Debtor's manager took steps to correct this problem and those funds began getting deposited in May. Propertyware then instituted a

lockdown in June due to a fraud alert. They locked out all access to the ACH for the rent funds. Debtor's manager was unable to finalize the reconciliations for the February, March and April rent during this time. The Debtor's manager was able to finally clear the security issue in mid-July and all the funds were then deposited in the bank account. The bank statement attached as Exhibit A will show that those funds now match the accrual accounting from the accountant. In the future, Debtor's manager will be more pro-active in letting the UST know about problems relating to ACH funds clearance but doesn't believe any more problems will happen.

### D. Delay in ACH processing caused no harm to the cash collateral creditor

The Debtor indicated in its Case management memo that the Denney Rd. property was subject to a cash collateral provision. Debtor has only received $1,000 per month in rent from that property and indicated that it wouldn't use those funds. There is more than $6,000 in the bank account now, and, as a result, the creditor's security interest is not damaged. In addition, the Debtor was not spending this money when it failed to come into the DIP account due to ACH transfer issues, so no cash collateral issues arose. If the UST wants the Debtor to open a separate bank account and incur transaction costs associated with that to segregate the funds, Debtor is ready to do so to prevent any future misunderstandings.

### E. Plan of reorganization in progress

The Debtor filed its Plan and Disclosure Statement on August 28, 2017 where it proposed to restructure the obligations associated with the Debtor's real estate and to pay unsecured claimants $50,000. Debtor believes that the proposed Plan and Disclosure, subsequent to comments from the Court and the UST, will be confirmed in a reasonable time. The Plan will pay more to the unsecured creditors than they stand to gain through a liquidation of the Debtor's assets as demonstrated by Exhibit C to the Disclosure statement. In the event of dismissal, the

Page **8** of **11**      **DEBTOR RESPONSE TO MOTION TO DISMISS**

Case 17-30353-tmb11    Doc 91    Filed 09/08/17

secured creditors will continue with their sheriff sales and the unsecured creditors will likely not receive much, if anything, as a result. Therefore it is in the best interests of the creditors to see this case continue to confirmation.

## V. Conclusion

For the reasons stated above, Debtor believes that its case proceeding forward is in the best interest of all the creditors and should not be dismissed or converted to chapter 7. Debtor asks that this Court deny the Trustee's Motion to Dismiss or Convert.

DATED this 8th Day of September, 2017.

Respectfully Submitted:

_____/s/ Theodore J. Piteo\_\_
Michael D. O'Brien, OSB# 951056
Theodore J. Piteo, OSB# 090311
Of Attorneys for Debtor-in-Possession

In re   Turning Leaf Homes IV, LLC

Case No. 17−30353−tmb11

# CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2017, I served the foregoing "**Debtor response to Motion to Dismiss**" on the following parties by hand delivery:

    **Debtor-in-possession**

I further certify that the following person(s) will be served electronically via ECF when the foregoing document is filed with the court:

JESSE A BAKER on behalf of Creditor U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust.
ecforb@aldridgepite.com, JPB@ecf.inforuptcy.com;jbaker@aldridgepite.com

JESSE A BAKER on behalf of Creditor Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust
ecforb@aldridgepite.com, JPB@ecf.inforuptcy.com;jbaker@aldridgepite.com

JESSE A BAKER on behalf of Creditor HSBC Bank USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-15
ecforb@aldridgepite.com, JPB@ecf.inforuptcy.com;jbaker@aldridgepite.com

JESSE A BAKER on behalf of Creditor Ocwen Loan Servicing, LLC
ecforb@aldridgepite.com, JPB@ecf.inforuptcy.com;jbaker@aldridgepite.com

JESSE A BAKER on behalf of Creditor WILMINGTON TRUST, NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE TO CITIBANK, N.A., AS TRUSTEE FOR MERRILL LYNCH MORTGAGE INVESTORS TRUST, MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2007-HE2
ecforb@aldridgepite.com, JPB@ecf.inforuptcy.com;jbaker@aldridgepite.com

JESSE A BAKER on behalf of Creditor Wells Fargo Bank, N.A.
ecforb@aldridgepite.com, JPB@ecf.inforuptcy.com;jbaker@aldridgepite.com

JESSE A BAKER on behalf of Creditor Wilmington Trust, National Association, not in its individual capacity, but solely as trustee for MFRA Trust 2015-2
ecforb@aldridgepite.com, JPB@ecf.inforuptcy.com;jbaker@aldridgepite.com

ERIC A MARSHACK on behalf of Creditor THE BANK OF NEW YORK MELLON
emarshack@rcolegal.com, ecfor@rcolegal.com;rcofilings@ecf.courtdrive.com;emarshack@ecf.courtdrive.com

ROBERT S PHED on behalf of Creditor EWCP LTH Fund, LLC
robert.phed@yahoo.com

THEODORE J PITEO on behalf of Accountant R. Nikki Douglass-Harmon
ted@pdxlegal.com, enc@pdxlegal.com;hugo@pdxlegal.com;reception@pdxlegal.com

THEODORE J PITEO on behalf of Debtor Turning Leaf Homes IV, LLC
ted@pdxlegal.com, enc@pdxlegal.com;hugo@pdxlegal.com;reception@pdxlegal.com

MIKE SCOTT on behalf of Creditor Federal National Mortgage Association
mscott@mccarthyholthus.com

MIKE SCOTT on behalf of Creditor MTGLQ Investors, LP
mscott@mccarthyholthus.com

MIKE SCOTT on behalf of Creditor U.S. Bank Trust, N.A.
mscott@mccarthyholthus.com

US Trustee, Portland
USTPRegion18.PL.ECF@usdoj.gov

SONIA ZAHEER on behalf of U.S. Trustee US Trustee, Portland
sonia.zaheer@usdoj.gov

  /s/Theodore Piteo
Michael D. O'Brien & Associates, P.C.
Theodore J. Piteo, OSB# 090311
Of Attorneys for Debtor-in-Possession

Page **11** of **11**     **DEBTOR RESPONSE TO MOTION TO DISMISS**

Case 17-30353-tmb11    Doc 91    Filed 09/08/17

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re<br><br>TURNING LEAF HOMES IV, LLC,<br><br>        Debtor. | **Case No.:** 17-30353-tmb11<br><br>**DECLARATION OF DEBTOR'S MANAGER TRACEY BARON** |

**I, TRACEY BARON, manager of Turning Leaf Homes V, LLC (TLH V) and Turning Leaf Homes IV, LLC (TLH IV),** make this declaration under penalties of perjury and state as follows:

    1.    I am a managing member of TLH V and TLH IV and make this declaration based on personal knowledge and am competent to testify to the matters herein.

    2.    On February 6, 2017, TLH IV, Debtor, acquired 9 properties, 5 were post-sale redemption rights properties, from various affiliated entities holding those property rights. I completed the transactions on that day and had journaled the funds over between these entities and the Debtor prior to that point.

**DECLARATION OF TRACEY BARON - 1**

3. In TLH IV, the Estate had $5,000 in its bank account on the day of filing, February 6, 2017.

4. On February 7, 2017, I believed I needed to show the funds going through the Debtor account for the purchases of real property that were completed the prior day to fulfill the contractual obligation to prevent any putative issues with an incomplete sale. To that effect, I directed Turning Leaf Management, Inc. to place $22,000 into the Debtor's Bank account and immediately record $26,000 going out to Turning Leaf Management, Inc. (TLM) to show the transfers. I did this solely to record the transactions. This was a mistake.

5. TLM never had the intent to contribute the $22,000 to the Estate. I did it solely as a recording mechanism for the journaled entries. I would request that the Court make a determination that the funds were not needed to finalize the journaled contract entries.

6. I have been advised that when I transferred out more than the $22,000, those were funds of the Estate. I have consented to return the $4,000 to the Estate and have instructed TLM, Inc. to return those funds immediately. I instructed my accountant to do this today.

7. The monthly operating reports filed during this time inadvertently reflected a "note payable" between the Debtor and my entities for the contribution. I didn't realize that was what that entry meant. Now that it has been brought to my attention, I have instructed my CPA to amend those monthly reports to provide that there was not a note payable. I expect to have these amended reports done relatively quickly and they are in process now.

8. The Debtor received a hand deposited check of $4,400 in February from a new post-petition tenant. That tenant hand delivered the checks to the TLH IV DIP account directly at the branch. The DIP account was officially opened on February 22, 2017. All other rent payments went through Propertyware.

9. Unfortunately, for the remainder of February, March, and April, the rents were deposited into the TLM account. Consultants who were initially helping me make the transition

and get everything up and running were let go and new consultants were hired and there were transitional issues. These issues resulted in more time than normal between the change-over of accounts.

10.     Propertyware began properly depositing the funds into the TLH IV DIP account in May and June. In late June, checks were forged as a result of theft from a vendor and the corresponding security breach caused a lock down on the Propertyware accounts and bank accounts later in June. This lockdown prevented immediate reconciliation of the rents that were incorrectly deposited earlier in the case.

11.     To clear the Propertyware issues took a few weeks, until approximately July 14, 2017. Once that issue was resolved and all service was restored, all the rent funds from February, March, and April for TLH IV were reconciled and deposited into the TLH IV Bank account. Since the completion of the change over all rents have gone directly into the DIP account and the bank statements now match the accrual accounting records. I have also requested separation in the accounts so future security fraud alters do not affect all associated accounts.

12.     In TLH V, the Debtor purchased thirteen properties.

13.     In TLH V, I did the exact same thing as TLH IV, running $12,000 through the account on June 9, 2017 to record the purchase of the TLH V properties having journaled the funds previously. This was a mistake and I have subsequently returned those funds to the Estate as of August 23, 2017. I would request that the Court make a determination that the funds were not needed to finalize the journaled contract entries.

14.     Propertyware was again slow in transferring rents over directly into the TLH V DIP account for June(officials at Propertyware took extra time to review the new account request because of the amount of ongoing accounts through their software). Then before the transfer was completed Propertyware had the security issue which prevented reconciliation of all the June rent

funds that did not go into the DIP account. Those funds have since been returned and the bank statement should match with the accrual accounting records.

15. On the 107th Ave Property, I told the tenant not to pay, but apparently she paid anyway. I was not aware of this until I fully reviewed the records. That $1,500 is still in the bank account and Debtor will not use it due to cash collateral restrictions. If the Court wants those funds to be segregated in separate account, Debtor is amenable.

16. I have personally retained lawyers at Glascock Street & Waxler, LLP to help me fully and properly undertake my duties as a fiduciary and to assist me in performing my duties as the manager of the Debtor in addition to my Debtor's attorney Mr. Piteo.

17. I have also discussed the importance of timely report creation and filing with my CPA and we intend to file the reports ahead of the deadline going forward.

18. In TLH IV and V we hit the ground running with substantially increased complexity and it took more time than I anticipated to sort out the process. Now that we are running smoothly, I anticipate no future problems in performance of my duties to this Court and to the Creditors as a fiduciary.

19. As a result of the work we have done to date, I believe the creditors stand to gain an even greater benefit from a confirmed Plan, especially considering the low likelihood of any payout in the event of a conversion or dismissal.

**I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.**

Dated: September 8, 2017.

By __/s/ Tracey Baron_____
Tracey Baron



P.O. Box 2830, Omaha, NE 68103-2830

# Account Statement

August 1, 2017 - August 31, 2017

Page **1** of 4

>006416 7881465 0001 008230 10Z
TURNING LEAF HOMES IV LLC
DEBTOR-IN-POSESSION
1701 SE OAK SHORE LN
MILWAUKIE
MILWAUKIE OR  97267-3628

## At your service

 bankofthewest.com

 1-800-488-2265

 1-800-659-5495 TTY/TDD

## Security Center

Stay informed. Visit the Bank of the West Security Center for tips and information on financial scam awareness at bankofthewest.com/security.

Remember to confirm your email during your next branch visit or call our Contact Center at 800-488-2265. Our emails keep you educated about our services, products and more.

## CLASSIC BUSINESS CHECKING  0160

TURNING LEAF HOMES IV LLC

| ACCOUNT SUMMARY | |
|---|---:|
| **Beginning Balance** | **$35,503.72** |
| 8 Credits | 8,598.00 |
| 0 Deposits | 0.00 |
| 11 Withdrawals | -2,375.92 |
| 3 Checks | -4,993.00 |
| **Ending Balance** | **$36,732.80** |

| EARNINGS SUMMARY | |
|---|---:|
| Interest this statement period | $0.00 |
| Interest credited year-to-date | $0.00 |
| Annual percentage yield earned | 0.00% |
| Average monthly balance | $38,923.34 |

**For your protection:**
Examine this statement promptly. Any discrepancy must be reported within 30 days. Consumer customers: A discrepancy regarding an electronic payment or line of credit must be reported within 60 days.

Exhibit A - 000001

In South Dakota, Bank of the West operates under the name of Bank of the West California.




Case 17-30353-tmb11    Doc 91    Filed 09/08/17


## CLASSIC BUSINESS CHECKING  xxx-xx0160 (continued)

### ACCOUNT DETAIL

### Credits

| Date | Amount | Description |
|---|---|---|
| 08/01 | $10.00 | SERVICE CHG REBATE VALUED CUSTOMER MONTHLY SERVICE CHARGE REBATE |
| 08/03 | 1,000.00 | ELECTRONIC DEP RenX Group LLC Settlement 080317 000002916631926 CCD |
| 08/04 | 488.00 | ELECTRONIC DEP RenX Group LLC Settlement 080417 000002909612762 CCD |
| 08/09 | 1,100.00 | ELECTRONIC DEP RenX Group LLC Settlement 080917 000002943978354 CCD |
| 08/11 | 3,100.00 | ELECTRONIC DEP RenX Group LLC Settlement 081117 000002944809026 CCD |
| 08/16 | 700.00 | ELECTRONIC DEP RenX Group LLC Settlement 081617 000002965048122 CCD |
| 08/17 | 700.00 | ELECTRONIC DEP RenX Group LLC Settlement 081717 000002962205882 CCD |
| 08/24 | 1,500.00 | ELECTRONIC DEP RenX Group LLC Settlement 082417 000002981455974 CCD |

**8 credits for a total of  $8,598.00**

### Withdrawals

| Date | Amount | Description |
|---|---|---|
| 08/01 | $10.00 | MONTHLY SVC CHG PREVIOUS PERIOD ACTIVITY RESULTED IN MONTHLY SERVICE CHARGE |
| 08/07 | 64.21 | ELECTRONIC DBT MGMT TRUST NW ONLINE PMT 080717 CKF030367015POS CCD |
| 08/07 | 199.50 | ELECTRONIC DBT WASTE MANAGEMENT INTERNET 080717 WEB |
| 08/14 | 45.24 | ELECTRONIC DBT PORTLAND GE ONLINE PMT 081417 CKF030367015POS CCD |
| 08/14 | 458.76 | ELECTRONIC DBT CITY BEAVERTON ONLINE PMT 081417 CKF030367015POS CCD |
| 08/21 | 54.17 | ELECTRONIC DBT Propertyware CC SIGONFILE 082117 PPD |
| 08/24 | 1,015.00 | ELECTRONIC DBT THEAFFINITYGROUP PURCHASE 082417 PPD |
| 08/28 | 4.00 | COUNTER CHECK FEE COUNTER CHECK FEE |
| 08/28 | 8.50 | ELECTRONIC DBT NW NATURAL GAS ONLINE PMT 082817 CKF030367015POS CCD |
| 08/28 | 34.44 | ELECTRONIC DBT PORTLAND GE ONLINE PMT 082817 CKF030367015POS CCD |
| 08/28 | 482.10 | ELECTRONIC DBT TUALATIN VALLEY ONLINE PMT 082817 CKF030367015POS CCD |

**11 withdrawals for a total of $2,375.92**

### Checks Paid

| Number | Date paid | Amount | Number | Date paid | Amount | Number | Date paid | Amount |
|---|---|---|---|---|---|---|---|---|
| 99001 | 08/29 | 498.00 | 99004* | 08/25 | 4,170.00 | 985028* | 08/21 | 325.00 |

**3 checks paid for a total of $4,993.00**

*\* Break in check number sequence.*





## IMPORTANT INFORMATION

### IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS

(For accounts that are maintained primarily for personal, family or household purposes.)



Telephone us at (800) 488-2265, or write us at Bank of the West*, Branch Service Center, P.O. Box 2573, Omaha, NE 68103-2573 as soon as you can if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. We will need to know the following:

1. Tell us your name and account number (if any).

2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.

3. Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (20 business days for transactions involving new accounts) to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

*In South Dakota, Bank of the West operates under the name of Bank of the West California.

   Bank of the West 0000003    1-800-488-2265    1-800-659-5495 TTY/TDD

# Account Statement
August 1, 2017 - August 31, 2017

Page **4** of **4**

This space intentionally left blank.

Bankofthewest.com | BankLine: 0000004 | 1-800-488-2265 | 1-800-659-5495 TTY/TDD


Case 17-30353-tmb11    Doc 91    Filed 09/08/17